UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KIMBERLY CULPEPPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:07-CV-48 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| BLUECROSS BLUESHIELD OF ) | |
| TENNESSEE, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Before the Court are the summary judgment motions of defendant Bluecross Blueshield of Tennessee, Inc. ("Defendant") (Court File No. 16) and plaintiff Kimberly Culpepper ("Plaintiff") (Court File No. 18). In considering these motions, the Court also considers the supporting memorandums, responses, and replies (Court File Nos. 17, 19, 20, 21, 22). In her claim, Plaintiff alleges Defendant's termination of her employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615.

In accordance with the following analysis, this Court will **GRANT** Defendant's motion for summary judgment (Court File No. 16), and **DENY** Plaintiff's motion for summary judgment (Court File No. 18).

### **I. Relevant Facts**

Plaintiff was an employee of Defendant, working in the mail room (Court File No. 19, p. 1). Plaintiff was being treated by Dr. Barry W. Donesky ("Dr. Donesky"), a fertility doctor, because she and her husband wanted to have a child (*id.*, p. 2).

On February 8, 2006, Plaintiff received a saline-infused ultrasound (Court File No. 18,

Attachment 2, pp. 22-23). She then underwent stimulation procedures on February 14 and 16 (*id*., p. 25); had blood work and an ultrasound done on February 17 (*id*., p. 26); had more blood work done on February 18 (*id*.); had an egg retrieval procedure on February 19 (*id*., p. 27); and had the fertilized eggs implanted on February 24, 2006 (*id*.). On March 6, 2006, Plaintiff was given a blood test to determine her hormone levels (*id.*, p. 28).

Plaintiff was absent from work for eleven days between February 19 and March 6, 2006 (Court File No. 21, p. 3). According to her doctor, Plaintiff required two, three-day periods of leave, for a total of six days of leave (Dr. Donesky's Deposition, Court File No. 21, Attachment 3, pp. 10, 12, 25-29, 40-45; Certification of Health Care Provider, Court File No. 1, Attachment 1; Dr. Donesky's Letter in support of Plaintiff's leave, Court File No. 21, Attachment 4, p. 4.)

Defendant had an "Incident Reporting Policy," which permitted Defendant to terminate any employee who had more than five unexcused absences within a twelve-month period (Court File No. 17, p. 3). Prior to Plaintiff's fertility treatment, but within the same twelve-month period, Plaintiff had accumulated two unexcused absences (Incident Reports, Court File No. 16, Attachment 4, pp. 15-16). During the fertility treatments, Plaintiff missed eleven days of work, resulting in eleven incidents of absence (Court File No. 17, p. 3). Defendant excused six of these incidents - a total of six days of absence - in light of Dr. Donesky's "Certification of Health Care Provider" form, which called for two periods of three-day absences (*id.*). This still left five unexcused absences, in addition to Plaintiff's previous two (*id.*). Based on these seven incidents of absence, Defendant terminated Plaintiff (Court File No. 17, p. 3; Recommendation for Termination, Court File No. 16, Attachment 4, p. 14).

## II. Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating cross-motions for summary judgment, each motion is evaluated on its own merits with all facts and inferences in the light favorable to the nonmoving party. *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co.*, 133 F.3d 955, 958 (6th Cir. 1998).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. Discussion

#### A. Defendant's Summary Judgment Motion

Plaintiff has thirteen total incidents of unexcused absences from work (Court File No. 21, p. 3). Plaintiff concedes two of those incidents, occurring prior to her fertility treatments, are not in dispute here (Court File No. 18, Attachment 4, p. 121). Defendant excused six of those incidents for Plaintiff's fertility treatments (Court File No. 17, p. 3). The issue is whether the remaining five incidents, resulting in Plaintiff's termination, are protected under the FMLA.

To qualify for protected leave under the FMLA, the leave must be due to a "serious health condition." 29 U.S.C. § 2612(a)(1)(D). According to 29 C.F.R. § 825.114(a)(2)(I), a "serious health condition" involves "a period of incapacity . . . of more than three consecutive calendar days . . . ." Here, Plaintiff has testified she was too sore from surgery and medications to work from February 19 to March 6, 2006, and thus she was incapacitated for more than three consecutive calendar days (*see* Plaintiff's Deposition, Court File No. 18, Attachment 5, pp. 124-25).

In order to avoid summary judgment, Plaintiff must submit significant probative evidence of her incapacitation. *See Celotex*, 477 U.S. at 324; *McLean*, 224 F.3d at 800. This burden of proof requires more than Plaintiff's own subjective claim of an inability to work. Plaintiff's claim of incapacitation must be supported by medical documentation and the determination of a medical professional. *See Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1037 (M.D.Tenn. 1995) (to avoid summary judgment, the plaintiff's own testimony she was too sick to work was inadequate, particularly where her doctor had not advised her to remain off work. As such, the plaintiff's absences were not covered by the FMLA, and thus subject to assessment points.); *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997) ("[I]n order to show that he or she was

required to miss work for more than three days, a plaintiff employee must show that he or she was prevented from working because of the injury or illness based on a medical provider's assessment of the claimed condition. It does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work. Rather, it means that a health care provider has determined that, in his or her professional medical judgment, the employee cannot work (or could not have worked) because of the illness.") (quotations and citation omitted); *cf. Brooks v. Lowe's Home Centers, Inc.*, 2006 WL 783453, *7 (S.D.Ohio March 27, 2006) (the district court distinguished the facts before it from *Brannon* because medical records were presented to support the plaintiff's subjective claims of an inability to work).

Here, Plaintiff testified she was too sore from her surgery and medication to work from February 19 to March 6, 2006, which includes the five unexcused absences in dispute (*see* Court File No. 18, Attachment 5, pp. 124-25). However, Plaintiff has failed to provide any additional evidence to support her incapacitation. The relevant documents and Dr. Donesky's testimony support the necessity of two periods of absence, each lasting three days, but these periods are not in dispute.[1] Nothing in the documents or Dr. Donesky's testimony support Plaintiff's claim of an inability to work for the entire period from February 19 to March 6, 2006.

First, Dr. Donesky completed the "Certification of Health Care Provider" form (*see* Court File No. 1, Attachment 1). The form contains two relevant sections. Under "The Employee's Leave

---

[1]The Court recognizes the FMLA requires the period of incapacity to be *more than* three consecutive calendar days, pursuant to 29 C.F.R. § 825.114(a)(2)(I). Therefore, two periods of three-day absences, when viewed individually, do not satisfy the requirements for FMLA protection. However, since Defendant granted Plaintiff's two three-day periods of absence, but terminated Plaintiff for absences outside of that leave, the Court need not consider this issue further. In viewing the facts in the light most favorable to Plaintiff, the Court assumes Defendant waived its right to challenge these two periods when it excused them.

Schedule," from February 8, 2006 to March 10, 2006, Dr. Donesky advised a "reduced [work] schedule" for Plaintiff of two to three days of work per workweek (*id.*). In the second relevant section, for the same time period, Dr. Donesky advises Plaintiff "may/will need to be absent from work" for two "episodes of incapacity," lasting three days each (*id.*). At his deposition, Dr. Donesky testified these sections were both referring to the same absences, i.e. in total, Plaintiff required only two absences of three days each (Court File No. 21, Attachment 3, pp. 41-43). Thus, the "Certification of Health Care Provider" form does not support Plaintiff's absences during the five days in dispute.

Second, Dr. Donesky sent a letter informing the recipient Plaintiff "underwent two outpatient procedures which required recovery and a three-day period of limited activity" (Court File No. 21, Attachment 4, p. 4). Defendant excused two three-day periods of absence (*see* Court File No. 17, p. 3). Dr. Donesky's letter does not mention any medical need for Plaintiff's additional five days of absence, for which she was terminated (*see id.*).

Third, during his deposition, Dr. Donesky reiterated the necessity of the two, three-day periods of absence after the egg retrieval, February 19, 2006, and the implantation, February 24, 2006 (*see* Court File No. 18, Attachment 3, pp. 44-45; 57-58). Although Dr. Donesky mentioned a few periods during the procedures when *some* women might develop symptoms requiring time off of work, Dr. Donesky also testified Plaintiff did not express to him any indications she had such symptoms (*see* Court File No. 21, Attachment 3, pp. 10, 12, 25-29, 40-45). Viewing potential complications during the relevant period of February 19 to March 6, 2006, Dr. Donesky testified the stimulation medications, *in some cases*, can cause a patient extreme nausea (Court File No. 18, Attachment 2, p. 25), or other complications from over-stimulated ovaries (Court File No. 21,

6

Attachment 3, pp. 28-29). Dr. Donesky does not remember, nor do Plaintiff's medical records indicate, Plaintiff suffered from any adverse side effects (*id.*, pp. 28-29, 45-46; Plaintiff's Medical Log, Court File No. 21, Attachment 3, Deposition Appendix Documents, file p. 28). Plaintiff has failed to provide medical proof she was unable to work during the entire period of the procedures.

Plaintiff's only evidentiary support, aside from her own testimony, is one statement Dr. Donesky made during his deposition: "After the egg retrieval, some patients are able to work, but most patients we generally would advise them to be off, you know, for *at least two or three days* after the egg retrieval and then the two or three days after the transfer." (Court File No. 18, Attachment 2, pp. 11-12)(emphasis added). Dr. Donesky's statement does not, however, assert *Plaintiff* would be incapable of working for more than three days after the procedures (*see id.*). The "Certification of Health Care Provider" form and the letter from Dr. Donesky demonstrates, *when specifically addressing Plaintiff*, Dr. Donesky determined two, three-day absences were necessary (*see* Court File No. 1, Attachment 1; Court File No. 21, Attachment 4, p. 4). To the extent Plaintiff asserts she had further symptoms which required additional absences, she has failed to support such claims with medical evidence (*see* Court File No. 21, Attachment 3, Deposition p. 45, file p. 28) (no notes exist in Dr. Donesky's patient log indicating Plaintiff had any adverse symptoms requiring more than the three-day periods of absence).

Plaintiff also asserts the determination of whether she was capable of working is her determination to make, "because stress reduction is an important issue and patients are encouraged to take the time off if they can" (Plaintiff's response, Court File No. 20, p. 4). Dr. Donesky testified: "We're very big on stress reduction. And for some patients if we know their job is very stressful and we think that that's going to, you know, hurt their chances for pregnancy, we would certainly,

7

you know, encourage them to take time off if they can." (Court File No. 21, Attachment 2, pp. 10-11). Again, this is a generalized statement of all patients. Nowhere does Dr. Donesky indicate Plaintiff had or informed him she had a "very stressful" job, or it was necessary for Plaintiff to take additional time off. Again, his written communications do not support a determination it was necessary for Plaintiff to be absent for longer than two, three-day periods (*see* Court File No. 1, Attachment 1; Court File No. 21, Attachment 4, p. 4).[2]

In light of the above analysis, Plaintiff has failed to provide evidence she was incapable of attending work on the five days of unexcused absences which resulted in her termination. Without medical evidence she was unable to work, the FMLA does not apply. *See* 29 C.F.R. § 825.114(a)(2)(I); *Brannon*, 897 F.Supp. at 1037. Because Plaintiff has failed to demonstrate her termination was in violation of the FMLA, this Court will **GRANT** Defendant's motion for summary judgment (Court File No. 16).

### B. Plaintiff's Summary Judgment Motion

The Court, having viewed the facts in the light most favorable to Plaintiff, has determined Plaintiff failed to satisfy her burden of proof to avoid summary judgment. Plaintiff's motion for summary judgment cannot prevail, because it raises no new issues and requires the Court to view the facts in the light most favorable to Defendant - a more stringent standard for Plaintiff. The Court accordingly will **DENY** Plaintiff's motion for summary judgment.

---

[2]Dr. Donesky does testify many patients take the entire period off work, as Plaintiff did, but does not testify doing so is due to an inability to work. "Well, basically what happens is, you know, the egg retrieval takes place. Five days later the implantation takes place. If we're asking them to take off, you know, two or three days after the egg retrieval, for a lot of patients it doesn't make a lot of sense, you know, to be going back to work for two days in between and then, you know, be off again for another three days after the egg retrieval or after the embryo transfer rather." (Court File No. 21, Attachment 2, p. 12).

## V. Conclusion

Plaintiff alleges she was incapable of working from February 19 to March 6, 2006, and thus her termination violated the FMLA. However, Plaintiff has failed to provide any evidence beyond her own testimony she was unable to work during that entire period. According to the documents and medical testimony before this Court, Plaintiff needed only two, three-day periods of leave. Defendant granted that leave, but terminated Plaintiff for her additional, unexcused absences. Because Plaintiff failed to provide sufficient evidence of her inability to work for the entire period of her absence, the FMLA does not apply. Plaintiff's termination is therefore not in violation of the FMLA, and this Court will **GRANT** Defendant's motion for summary judgment (Court File No. 16), and **DENY** Plaintiff's motion for summary judgment (Court File No. 18).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**